# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SBERBANK OF RUSSIA,** | : | **3:14cv216 (WWE)** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **YURI TRAISMAN,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OF DECISION

This action concerns the three guaranty agreements that plaintiff Sberbank of Russia asserts were executed by defendant Yuri Traisman in connection with commercial loans issued by plaintiff to a Russian company known as Sealand LLC.  Traisman has asserted affirmative defenses and counterclaims alleging bad faith conduct, failure to account for certain payments, lack of actual loan default, improper execution of the guaranties, and abuse of process; defendant has also requested a set-off and demanded an accounting.

In a prior ruling, this Court held that defendant Traisman was barred from relitigating his liability under the guaranties due to the rendering of an enforceable decision from the Russian courts.  Plaintiff has moved for summary judgment on defendant's affirmative defenses and counterclaims, and for entry of judgment and an award of prejudgment and post-judgment interest.  Defendant Traisman has also filed a motion for entry of judgment.

## BACKGROUND

For purposes of ruling on this motion, the Court recites the following factual and procedural background from its prior ruling on summary judgment in addition to undisputed facts relevant to the instant motions.

Plaintiff Sberbank is a Russian commercial bank.  Defendant Traisman served

on the Board of Directors of Sealand.

In September 2007, Sberbank entered into a lending transaction with Sealand for construction of a shopping center in Moscow, Russia.  In 2008 and 2009, Sealand obtained two additional loans from Sberbank to cover increased construction costs.

Sberbank alleges that Traisman executed three personal guaranties in favor of Sberbank to secure these loans.  Traisman disputes that he executed the guaranties.

Sberbank demanded that Sealand make full repayment of the loan balances after it allegedly stopped rendering payments on the loans in April 2013.  Sberbank also demanded full payment from Traisman on the loans.

In October 2013, Sberbank filed a lawsuit in the Tushino district of Moscow seeking money judgments arising from the defaulted loans retained by Sealand.   In that action, Sberbank named defendants Sealand, Traisman, and another individual, Yevgeniy Lisin.  The Court determined that it had no jurisdiction because Traisman had no registered place of residence in Moscow, and Lisin resided in another district. Accordingly, the case was transferred to the Balashikha Garrison Military Court in the district where Lisin resided.  However, the Tushino Court later determined that the case should have been transferred to the regular Balashikha court rather than the military court.

On October 7, 2014, the Balashikha City Court issued a judgment in Sberbank's favor.  The Balashikha Court considered but rejected Traisman's claim that the signatures on the guaranties were forged.  The Court, noting his repeated failure to appear for a court ordered forensic examination of his signatures, found that Traisman had not sustained his burden of proof.  The Balashikha City Court held that defendant

and co-defendant were joint and severally liable for RUB 771,832,691.89.

Traisman appealed the Balashikha decision to the Appellate Division of the Moscow Regional Court.  On February 9, 2015, the Moscow Regional Court upheld the Balashikha decision.  However, Traisman appealed to the second appellate level, the Cassation Division of the Moscow Regional Court.  On May 27, 2015, the Cassation Division determined that the matter should be remanded to the lower Appellate Division for further proceedings, including a forensic examination of the signatures on the guaranties.

On June 29, 2015, the Appellate Division of the Moscow Regional Court issued an order commissioning the Russian Federal Center of Forensic Science of the Ministry of Justice to conduct the forensic analysis examination; it instructed Traisman to appear on August 3, 2015, to provide handwriting exemplars or sign specimen signatures.  The Order described the consequences pursuant to Article 79(3) of the Civil Procedure Code in the event of noncompliance.

On August 3, 2015, the Appellate Division of the Moscow Regional Court affirmed the Balashikha City Court decision after Traisman failed to appear at the hearing scheduled for that day.  According to the decision issued by the Appellate Division, the June Order was sent by DHL to Traisman but he refused to receive it.  The Appellate Division observed that "that the failure of Traisman to appear in court and to make available his specimen signatures strongly suggests avoidance of the forensic handwriting analysis for the purposes of the case under review."  The Appellate Court affirmed that Traisman had failed to sustain his burden of proof that he had not signed the signatures.

In October 2015, Traisman sought review of the Appellate Division's decision from a panel of the Cassation Division of the Moscow Regional Court.  However, a judge of the Cassation Division determined that Traisman's appeal did not warrant consideration by the judicial panel.  Traisman appealed that determination to the Supreme Court of the Russian Federation ("Russian Supreme Court").  On November 9, 2015, a justice of the Russian Supreme Court also found that Traisman's appeal did not merit consideration by a full panel of the Russian Supreme Court.

In his motion for entry of judgment, defendant Traisman maintains that Sberbank has failed ot deduct additional amounts already received, including three payments totaling RUB 431,278,569 and rental payments from Sealand's commercial rents received during Sealand's bankruptcy proceedings.  However, the accounting documents demonstrate that the alleged three payments, which are labeled "principal amount transferred to debt arrears," are actually credits.  Further, a decision dated March 11, 2016, from Sealand's completed bankruptcy proceedings confirms that Sealand's assets, including the rental payments from tenants, have been accounted for and applied to Sealand's creditors, including Sberbank.

Thus, Sberbank received RUB 453,218,400 from the sale of the Shopping Center that secured the loans, and RUB 9,453,569.60 from the proceeds of the sales of Sealand's additional assets. The amount of Sberbank's outstanding claim against Mr. Traisman is RUB 309,160,722.29 (RUB 771,832,691.89 minus RUB 462,671,969.60).

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a

matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

Sberbank maintains that Traisman's affirmative defenses are barred by the principles of res judicata and collateral estoppel applied by this Court in its prior ruling on summary judgment.  The Court has already determined that, pursuant to principles of comity, it is appropriate to afford preclusive effect to the Balashikha Court as affirmed by the Appellate Division.  The Russian decision precludes Traisman's claim that he did not sign the guaranties and bars his attempt in this case to relitigate his rights under the guaranties.

Article 134 of the Russian Civil Procedural Code provides that a court must dismiss a case if it determines that there already exists an enforceable judgment from another court of competent jurisdiction concerning a dispute that involved the same

parties, the same subject matter and the same causes of action.  Article 61 of the Russian Civil Procedural Code provides that circumstances established by a prior court ruling that results in an enforceable judgment are deemed binding and conclusive in any subsequent litigation between the same parties.

As stated in this Court's prior ruling, this standard is substantially similar to Connecticut claim or issue preclusion law.  A claim is precluded under the doctrine of res judicata where (1) the initial judgment was rendered on the merits by a court of competent jurisdiction, (2) the identities of the parties to the actions are the same, (3) the parties had an adequate opportunity to litigate the matter fully and (4) the same claim demand or cause of action is at issue.  See Barton v. City of Norwalk, 131 Conn. App. 719, 727 (2011).  A valid, final judgment entered on the merits by court of competent jurisdiction is an absolute bar to a subsequent action between the same parties on the same claim or demand.  Santorso v. Bristol Hosp., 308 Conn. 228, 348 (2013).  Where a party has fully and fairly litigated a claim, that party may be barred from asserting future action on matters not raised in a prior proceeding.  Weiss v. Weiss, 297 Conn. 446, 459 (2010).

Similarly, collateral estoppel prohibits relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action.  Carnemolla v. Walsh, 75 Conn. App. 319, 325 (2003), cert. denied, 263 Conn. 913 (2003).  Under Connecticut law, an issue is not necessarily determined unless it is essential to the judgment. Dowling v. Finley Assocs., Inc., 248 Conn. 364, 374 (1999).

Thus, principles of Russian and Connecticut preclusion law mandate that Traisman is now barred by res judicata from relitigating any defenses and

counterclaims relevant to the guaranties that he could have asserted in the prior litigation against Sberbank. Defendant's defenses and counterclaims asserting Traisman's rights pursuant to the guaranties could have been litigated in the proceeding before the Russian courts. Defendant's failure to do so precludes litigation of such claims in the instant proceeding.[1]

However, defendant's abuse of process counterclaim is not precluded because defendant could not have asserted such a claim in the Russian proceeding. Defendant asserts that plaintiff has impermissibly used the legal process of this Court to attach and restrain defendant's assets.

A claim of abuse of process requires a party to demonstrate use of a judicial process for an improper purpose. Miles v. City of Hartford, 445 F. Appx. 379, 384 (2d Cir. 2011). Here, defendant argues that plaintiff's prejudgment remedy action sought improperly to attach or restrain his assets. "The purpose of a prejudgment remedy of attachment is security for the satisfaction of the plaintiff's judgment ... [and] it is primarily designed to forestall any dissipation of assets by the defendant...." Bernhard-Thomas Building Systems, LLC v. Dunican, 100 Conn. App. 63, 79 (Conn. App. 2007). It is well established that a prejudgment remedy application may not be used to secure an action brought to enforce a potential foreign judgment. Cahaly v. Benistar Property Exchange Trust Company, Inc., 268 Conn. 264, 274 (2004). However, in this instance, plaintiff filed the prejudgment remedy application on its independent action brought

---

[1] Summary judgment will also enter on defendant's affirmative defenses of failure to state a claim, accord and satisfaction, novation, unconscionability, illegality, and failure and inability to join necessary and indispensable parties. Defendant has not demonstrated that these affirmative defenses have a factual basis or legal merit.

against Traisman to enforce its rights under the guaranties.  The Court granted the prejudgment remedy.  The Court finds that the assertion of abuse of process is without merit.

Accordingly, the Court will grant Sberbank's motion for summary judgment in its favor and will deny Traisman's motion for entry of judgment.

Prejudgment Interest

Sberbank has requested the Court to enter judgment with an award of prejudgment interest.

It is well established that in diversity actions, Connecticut conflicts of law applies. See Valley Juice Ltd, Inc. v. Evian Waters of France, Inc., 87 F.3d 604, 614 (2d Cir. 1996).  Relevant to this case, Connecticut General Statutes § 50a-59 provides: "With respect to a foreign-money claim, recovery of prejudgment interest and the rate of interest to be applied in the case are matters of the substantive law governing the right to recovery under the conflict of laws rules of this state."  Accordingly, Russian law governs the claim prejudgment interest.

Article 395 of the Russian Civil Code states: "Interest shall be payable on another person's funds used as a result of improper retention, any avoidance of their return or any other delay in payment...."  In accordance with Article 811(1) of the Russian Civil Code, interest accrues from the date of the breach to the date of repayment.  Sberbank sent its demand for payment to defendant in Greenwich on July 23, 2013.  Sberbank submits that the Court should assume that defendant received the demand two weeks later on August 6, 2013.  The Court finds that two weeks is a reasonable amount of time to assume receipt of the demand letter; thus, in accordance

8

with the guaranties, fixes the date of breach on August 7, 2013, which represents one day after August 6 receipt of the demand letter.

Prior to June 1, 2015, Article 395 set forth that the applicable rate of interest should be determined by the discount rate set forth by the Central Bank of the Russian Federation and that the date for determining that rate may be the date on which the claim is filed.  Due to an amendment,  Article 395 provides that, effective June 1, 2015, the applicable rate of prejudgment interest is determined by the average interest rate that banks offer to individuals for their deposits at the location of the creditor's residence or primary place of business.  In light of Article 395's amendment effective June 1, 2015, the Court will set forth the interest rates prescribed prior and subsequent to the amendment.

Upon review of the materials submitted in support of the Sberbank's motion for entry of judgment and award of prejudgment interest, the Court finds that the prejudgment interest rate for the period from August 6, 2013 up to June 1, 2015 is 8.25% as applied to the total amount awarded by the Balashikha Court (RUB 771,832,691.89).

However, as this Court has observed, the value of Sberbank's judgment is diminished by the falling value of the ruble.  Defendant's conduct including the transfer of his property to his family members, his request for an additional hearing date on the Prejudgment Remedy Application, reconsideration of the Court's Prejudgment Remedy Order, has prolonged the proceedings.  The Connecticut Foreign-Money Claims Act provides the Court with discretion to increase the amount of prejudgment interest when there is "conduct by a party or its attorney causing undue delay or expense."  Conn.

9

Gen. Stat.§ 50a-59(b).  Accordingly, the Court will apply a prejudgment interest rate of 10% for the period from August 6, 2013 up to June 1, 2015 to the amount of RUB 771,832,691.89 for a total award of RUB 142,360,252.06.

Consistent with the amended Article 395, the Court finds the following prejudgment rate for the period from June 1, 2015 to the present:

From June 1, 2015 to June 15, 2015, at the rate of 11.80 percent as applied to the entire amount awarded by Balashikha Court, RUB 771,832,691.89, for a total award of RUB 3,541,854.46;

From June 15, 2015 to July 15, 2015, at the rate of 11.70 percent as applied to the entire amount awarded by Balashikha Court, RUB 771,832,691.89, for a total award of RUB 7,525,368.75;

From July 15, 2015 to August 11, 2015, at the rate of 10.74 percent as applied to the entire amount awarded by Balashikha Court, RUB 771,832,691.89, for a total award of RUB 6,217,112.33;

From August 11, 2015 to August 17, 2015, at the rate of 10.74 percent as applied to RUB 318,614,291.89, which is the remainder of the Balashikha Judgment after subtracting the funds from the sale of the Shopping Center that Sberbank received on August 11, 2015, for a total award of RUB 570,319.58;

From August 17, 2015 to September 15, 2015, at the rate of 10.51 percent as applied to RUB 318,614,291.89, for a total award of RUB 2,697,512.50;

From September 15, 2015 to October 15, 2015, at the rate of 9.91 percent as applied to RUB 318,614,291.89, for a total award of RUB 2,631,223.03;

From October 15, 2015 to November 17, 2015, at the rate of 9.49 percent as applied to RUB 318,614,291.89, for a total award of RUB 2,771,678.83;

From November 17, 2015 to December 15, 2015, at the rate of 9.39 percent as applied to RUB 318,614,291.89, for a total award of RUB 2,326,946.38;

From December 15, 2015 to December 23, 2015, at the rate of 7.32 percent as applied to RUB 318,614,291.89, for a total award of RUB

518,279.25;

From December 23, 2015 to January 25, 2016, at the rate of 7.32 percent as applied to RUB 309,160,722.29, which is the remainder of the Balashikha Judgment after further subtracting the funds from the sale of Sealand's remaining assets that Sberbank received on December 23, 2015, for a total award of RUB 2,074,468.45; and

From January 25, 2016 to the present date, at the rate of 7.94%.

Thus, the Court will award prejudgment interest in amount of RUB 173,235,015.61 plus the amount of prejudgment interest from January 25, 2016 to the date of judgment at the annual rate of 7.94% equal to RUB 68,187.11 per day.

Offer of Judgment Interest

On November 12, 2015, Sberbank filed its offer of judgment, offering defendant a settlement of RUB 327,982,259.08, which he failed to accept.  In accordance with this ruling, Sberbank will recover an amount greater than its offer of judgment.  Thus, plaintiff is also entitled to offer of judgment interest pursuant to Connecticut General Statute § 52-192a, which is considered a procedural rather than substantive provision of law.  Paine Webber Jackson and Curtis, Inc. v. Winters, 22 conn. App. 640, 651 (1990).  An award of offer of judgment interest is mandatory and the "affords no allowance for the discretion of the court."  Ceci Bros., Inc. v. Five Twenty-One Corp., 81 Conn. App. 419, 430 (2004).  Accordingly, the Court will award offer of judgment interest of 8% on plaintiff's entire award, which includes prejudgment interest and any attorney fees.  MacDermid Printing Sol, LLC v. Cortron Corp, 2015 WL 575139, at *2 (D. Conn. Feb. 11, 2015).

Attorney Fees

Defendant asserts that plaintiff is not entitled to attorney fees pursuant to the

11

Guaranties.  However, plaintiff has not yet moved for attorney fees, although it intends to do so within fourteen days after entry of judgment.  The Court will determine whether Sberbank is entitled to attorney fees after plaintiff files its application for such fees.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Sberbank's motion for summary judgment on the counterclaims and defenses [doc. 183]; GRANTS Sberbank's motion for entry of judgment and award of prejudgment interest and offer of judgment interest [doc. 195]; DENIES Traisman's motion for summary judgment [doc. 202].  The Court will enter judgment in plaintiff's favor and close this case.


Dated this 11th day of April 2016 at Bridgeport, Connecticut.


/s/ Warren W. Eginton
Warren W. Eginton
Senior U.S. District Judge